## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**LOUIS SAVINO,**                                                               Chapter 7
      Debtor                                                   Case No. 14-14661-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### MEMORANDUM

### I. INTRODUCTION

The matter before the Court is the Debtor's Motion to Establish Value of Real Property and Avoid Judicial Lien (the "Lien Avoidance Motion") pursuant to which Louis Savino (the "Debtor" or "Savino") seeks to avoid a judicial lien held by First American Title Insurance Company ("First American").[1] First American filed an Opposition to the Debtor's Lien Avoidance Motion, and the Court conducted a non-evidentiary hearing on August 2, 2016.  At the hearing, the Court granted First American's request to submit a supplemental opposition to the Lien Avoidance Motion with respect to the decision of the United States Court of Appeals for the First Circuit in Nelson v. Scala, 192 F.3d 32 (1st Cir. 1999)(holding that a Chapter 7 debtor could avoid judicial liens encumbering his 50-percent interest in his residence, thereby adjusting the "asymmetry" of the statutory language set forth in 11 U.S.C. § 522(f)).  The Debtor filed a

---

[1] This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334.  The matter is a core proceeding as that term is defined under 28 U.S.C. § 157(b)(2)(K).

1

Response to the Supplemental Opposition in which he, among other things, applied the formula set forth in 11 U.S.C. § 522(f)(2)(A) in a manner consistent with the decision in Nelson v. Scala.

Because the Debtor's application of the formula set forth in 11 U.S.C. § 522(f)(2)(A) in his Response complies with MLBR 4003-1 and the statute as interpreted by the court in Nelson v. Scala,[2] the Debtor is entitled to avoid First American's judicial lien in full, unless this Court were to accept First American's arguments that 1) it is entitled to an equitable lien, or 2) Section § 522(o) of the Bankruptcy Code applies to limit the amount of the Debtor's exemption. *See* 11 U.S.C. § 522(o). For the reasons set forth below, the Court rejects First American's arguments. Accordingly, the Court shall enter an order granting the Debtor's Lien Avoidance Motion.

## II. FACTS

The material facts necessary to resolve the Lien Avoidance Motion and the Opposition are not in dispute. The Court has adopted the parties' uncontested representations made in their respective pleadings, but not the inferences that First

---

[2] Section 522(f)(2)(A) provides:

> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A).

2

American draws from those representations. Neither party requested an evidentiary hearing.

In In re Savino, Case No. 14-14661-JNF, 2016 WL 2865414 (Bankr. D. Mass. May 11, 2016), this Court considered the Debtor's Motion to Reopen his case for the purpose of avoiding First American's judicial lien. In conjunction with ruling on that motion, the Court noted that the Debtor filed his bankruptcy case on October 7, 2014 and received a discharge on February 27, 2015. The Court further noted that First American, despite notice of the commencement of the Debtor's bankruptcy case and of deadlines applicable to objections to exemptions and the filing of complaints under 11 U.S.C. §§ 523, and 727, did not file a complaint seeking an exception to discharge of its debt. *See* 2016 WL 2865414 at *1-2.

The Debtor owns property located at 58 Weldon Farm Road, Rowley, Massachusetts (the "Property"). He and his spouse, who is not a debtor, acquired the Property by quitclaim deed dated March 24, 2005 and recorded on March 25, 2005. The Property is subject to a mortgage recorded on March 25, 2005. The Debtor listed the outstanding amount due under the mortgage as $210,760. According to the Debtor, the Property is subject to the following:

> A first mortgage, acquired via an assignment dated October 14, 2014, from Debtor and Patrizia Savino held by Green Tree Servicing, LLC in the amount of $210,760.00 and recorded in the Southern Essex District Registry of Deeds in Book 33603, Page 269. . . . The original mortgage was dated March 24, 2005 from Debtor and Patrizia Savino held by Countrywide Home Loans, Inc. in the amount of $250,000.00 and recorded in the Southern Essex District Registry of Deeds in Book 24094, Page 488. . . .

3

The Debtor recorded a declaration of homestead on the Property on March 25, 2005 pursuant to § 1 of the prior version of Mass. Gen. Laws ch. 188.[3]

According to First American, on May 13, 2011, People's United Bank, commenced an action against the Debtor in the Essex Superior Court, Department of the Trial Court, captioned People's United Bank v. Savino, Case No. 1177CV909, for breach of a promissory note and to collect a deficiency following its foreclosure of property formerly owned by the Debtor in Maine. First American attached a copy of the Verified Complaint filed by People's United Bank against Savino, as well as a copy of the docket. The Debtor was served with a copy of the complaint on May 18, 2011. First American averred in its Opposition to the Lien Avoidance Motion that the Debtor recorded a second declaration of homestead on May 20, 2011, immediately after the legal proceedings commenced by People's United Bank. The Debtor did not dispute First American's assertion in its Opposition that he filed a subsequent declaration of homestead, the recordation of which would have had the effect of terminating the prior homestead. *See* Mass. Gen. Laws ch. 188, § 10. Although the declaration of homestead was recorded on May 20, 2011, it was executed by the Debtor and his spouse on April 6, 2011, before the filing of the People's

---

[3] Mass. Gen. Laws ch. 188, governing homesteads, was repealed in its entirety in 2010 and replaced with an entirely new chapter 188, effective March 16, 2011. Under the former Mass. Gen. Laws ch. 188, § 1, repealed in 2010, an estate of homestead, to the extent of $500,000 in land and buildings, could be acquired by "an owner or owners of a home or one or all who rightfully possess by lease or otherwise and who occupy or intend to occupy said home as a principal residence." Where the property was mortgaged, this amount of homestead protection applied to the debtor's equity in the property, not the total value of the real estate. Prior recorded homestead declarations remain in effect, and are governed by the new homestead law enacted in 2010.

United Bank complaint. On June 7, 2011 People's United Bank obtained a real estate attachment in the amount of $325,000 against all property belonging to the Debtor, including the Property.

The Debtor formerly owned property located at 36 Franklin Street, Peabody, Massachusetts (the "Franklin Street Property"). According to First American, on or about January 12, 2009, the Debtor refinanced the Franklin Street Property and executed a promissory note in the amount of $216,000. The note required the Debtor to make monthly payments of principal and interest over the course of 30 years. The note was subsequently assigned to JPMorgan Chase Bank, N.A. and, later, to First American. First American added that, when the Debtor refinanced the Franklin Street Property, he also executed a mortgage which was meant to secure payment of the promissory note. It also stated: "Savino, however, failed to record the Mortgage. Once this was discovered sometime in early 2011, Savino agreed to execute a Replacement Mortgage and record it at the Registry of Deeds. Once again, he failed to do so."

First American further averred that the Debtor sold the Franklin Street Property on July 21, 2011 for $245,000 while the People's United Bank lawsuit was pending. It added the following:

> Savino knew that the Franklin Street Property was supposed to be encumbered by the Mortgage but he failed to disclose that fact during the sale or use the sales proceeds to pay off the Note.
>
> Moreover, Savino failed to notify the holder of the Note (at the time, JP Morgan Chase Bank, N.A.) that he intended to sell the Franklin Street Property.

5

> Instead, Savino used the sales proceeds to satisfy the People's United debt. Specifically, he paid $200,000 to People's United's attorney, Michael Feinman, and another $33,000 to his attorney, Robert Waters, Esq., who, upon information and belief, represented him in the People's United Lawsuit. . . .
>
> In exchange for the payment, the People's United Lawsuit was dismissed and the real estate attachment on Savino's real estate including the Weldon Farm Property was discharged. . . .

(paragraph numbers omitted).

On May 6, 2014, First American filed an action against the Debtor in the Suffolk Superior Court, Department of the Trial Court, and sought and obtained, on May 30, 2104, a real estate attachment against the Property in the amount of $300,000. First American did not attach a copy of its complaint or a copy of the docket in the Suffolk Superior Court action to its Opposition to the Lien Avoidance Motion. According to the Debtor, it only alleged breach of contract in its complaint.

### III. POSITIONS OF THE PARTIES

First American argues that the Debtor committed fraud when, as a mortgagor, he failed to record the mortgages on the Franklin Street Property and ultimately used the sale proceeds to satisfy the People's United Bank's attachment in the amount of $325,000, which encumbered all property of the Debtor, including both the Franklin Street Property and the Property. First American seeks an equitable lien against the Property and concomitantly denial of the Lien Avoidance Motion or, in the alternative, a reduction in the value of Savino's homestead exemption pursuant to 11 U.S.C. §522(o)(1) which would result in the survival of First American's lien in the amount of at least $119,240. It argues:

6

A debtor's fraud and conversion of funds is sufficient to support the imposition of an equitable lien and denial of the homestead exemption if such illicit funds were used to benefit the homestead. *See e.g.*, In re Gamble-Ledbetter, 419 B.R. 682, 701 (Bankr. E.D. Tex. 2009) (imposing equitable lien and rejecting homestead exemption where debtor used fraudulently obtained funds to reduce indebtedness on homestead); In re Thiel, 270 B.R. 785, 786 (Bankr. M.D. Fla. 2001) (same); In re Kravitz, 225 B.R. 515 (Bankr. D. Mass. 1998) (same). The critical factor in determining whether an equitable lien will attach is whether the fraudulently obtained funds can be traced directly to the homestead. Crawford v. Silette, 608 F.3d 275, 281 (5th Cir. 2010).

Citing In re Corbett, 478 B.R. 62, 69 (Bankr. D. Mass. 2012), a case in which this Court set forth four elements required to sustain an objection under 11 U.S.C. § 522(o) (i.e., (1) the debtor disposed of property within 10 years before the bankruptcy filing; (2) the property was nonexempt; (3) some of the proceeds from the sale of the nonexempt property were used to reduce a debt associated with an existing homestead; and (4) the debtor disposed of the nonexempt property with the intent to hinder, delay or defraud a creditor), First American contends that as to the first and second elements, Savino disposed of a nonexempt property, namely the Franklin Street Property, in 2011, well within the 10 year period, that as to the third element, the proceeds of the sale of the Franklin Street Property were used to satisfy People's United Bank's $325,000 attachment against the Property, and that as to the fourth element, the Debtor failed to record the mortgage on the Franklin Street Property or disclose its sale in an effort to hinder, delay or defraud the note holder. See Nat'l Union Fire Uns. Co. of Pittsburgh v. Krause (In re Krause), 510 B.R. 172 (Bankr. N.D. Ill. 2014), *aff'd*, 526 B.R. 768 (N.D. Ill. 2014) (finding fraud where debtor failed to record mortgage and took proceeds from sale rather than paying off loan). Accordingly, First American contends that pursuant to 11 U.S.C. §

7

522(o), Savino's homestead exemption should be reduced by $325,000. It applies the § 522(f)(2)(A) formula as follows:

| | | |
|---|---|---|
| (i) | First American lien: | $300,000 |
| (ii) | Other liens: | $210,760 |
| (iii) | Homestead exemption: | $175,000 ($500,000 less $325,000) |
| (i) – (iii) | Total | $685,760 |
| (iv) | Property value: | $505,000 |
| (vi) | Impairment: | $180,760 |

Thus, in First American's view, the Debtor only would be entitled to partially avoid its lien on the Property such that its lien would remain in the amount of at least $119,240.

The Debtor disputes First American's contention that he sold the Franklin Street Property with any intent to hinder, delay or defraud any creditors. He maintains that First American failed in its burden under § 522(o), adding that First American initiated a breach of contract action against him in Suffolk Superior Court and did not allege fraud in that action. The Debtor also maintains that <u>In re Krause</u> is not controlling precedent, asserting that First American has been unable to produce any evidence that the Debtor misrepresented he would record the mortgage.

Addressing the elements of § 522(o) as set forth in <u>In re Corbett</u>, the Debtor argues as follows:

> Debtor concedes the first two criteria are met in this matter with respect to the sale of 36 Franklin Street, Peabody, Massachusetts 01960 ("Franklin Street Property"). However, Debtor disputes the third and fourth criteria are present. For the third criteria, First American alleges Debtor used proceeds from the sale of Franklin Street Property to reduce a debt associated with the homestead, namely, a writ of attachment obtained by People's United Bank on the Premises. However, the value of Debtor's interest in the Premises was already protected by the homestead, as it was in place prior to the recording of the attachment. Accordingly, at the time of the Franklin Street Property's conveyance, Debtor's equity was protected up to $500,000.00. M.G.L. c. 188 §§ 1, 5. As such, Debtor's equity on the

8

Premises was unaffected by the sale of the Franklin Street Property or the resulting release of the People's United Bank's attachment.

Any allegation Debtor used the proceeds from the Franklin Street Property to satisfy the mortgage recorded prior to the homestead and thus increase his equity in the Premises, as well as potentially alter the Court's analysis, is categorically false. *See* In re Smither, 542 B.R. 39, 49 (Bankr. D. Mass. 2015). Debtor previously submitted the HUD-1 Settlement Statement from the sale of the Franklin Street Property that shows the sale paid off liens and related legal fees associated with the Franklin Street Property. (Doc 54-1).

## IV. DISCUSSION

The Court rejects First American's claim to an equitable lien or a reduction in the amount of the Debtor's homestead under § 522(o) based upon In re Krause, 510 B.R. 172 (Bankr. N.D. Ill. 2014), as well as allegations that the Debtor engaged in fraud or used proceeds from the sale of the Franklin Street Property with intent to hinder, delay or defraud creditors for several reasons. If First American was convinced of the merits of its fraud claims it could have, and should have, filed a complaint against the Debtor under 11 U.S.C. § 523(a)(2)(A) or (a)(6) as the plaintiff did in In re Krause. In addition, First American failed to rebut the Debtor's assertion that it only brought a breach of contract action against him in the state court. First American attached a copy of the Verified Complaint filed against the Debtor by People's United Bank to its Opposition to the Debtor's Lien Avoidance Motion, yet it failed to attach a copy of its own complaint against the Debtor filed in Suffolk Superior Court. The only permissible inference from that omission is that the Debtor is correct - - First American's fraud claims are recently contrived. In the absence of affidavits from closing attorneys involved in the refinancing and sale of the Franklin Street Property setting forth an explicit undertaking on the part

9

of the Debtor, as mortgagor, to record the mortgage on the Franklin Street Property, an atypical circumstance, the Court shall not impute fraud to the Debtor and impose an equitable lien on the Property based upon similar facts in a case from Illinois involving an adversary proceeding with claims under 11 U.S.C. § 523(a)(2)(A) and (a)(6).

The imposition of an equitable lien would be antithetical to the decision of the United States Supreme Court in Law v. Siegel, __ U.S. __, 134 S.Ct. 1188 (2014). In In re Mateer, 525 B.R. 559 (Bank. D. Mass. 2015), the court considered the implication of the decision in Siegel when it held that a debtor, who intentionally and fraudulently failed to disclose the existence of an insurance claim and cash payments received from his insurer and mortgage lender, was entitled to claim a Massachusetts homestead exemption in his home, which included the insurance proceeds, up to the automatic homestead amount of $125,000. The court in Mateer, observed:

> In writing for a unanimous Court in Siegel, Justice Scalia articulated the question before the Court as follows: "In this case, we consider whether a bankruptcy court ... may order that a debtor's exempt assets be used to pay administrative expenses incurred as a result of the debtor's misconduct." 134 S.Ct. at 1192. The answer given by the Court was an emphatic "no." Uncharacteristically, however, rather than conclude its decision after ruling on the question presented, the Court kept going, changing course and ending up on the subject of whether a bankruptcy court may disallow an exemption claim based on a debtor's fraudulent conduct, a question not before it. The Court took note of the existing case authority disallowing an exemption based on a debtor's fraudulent concealment of the asset claimed as exempt and then observed that the Bankruptcy Code "admits no such power" to the bankruptcy court. Id. at 1196. The Court's declaration, while not essential to its holding, has begun to affect a sea-change among lower courts facing this issue. As the United States Court of Appeals for the First Circuit recently recognized:
>
>> We note that the Supreme Court has recently held that bankruptcy courts do not have "a general, equitable power ...

10

> to deny exemptions based on a debtor's bad-faith conduct."
> *See* Law v. Siegel, __ U.S. __, 134 S.Ct. 1188, 1196, 188 L.Ed.2d
> 146 (2014) (emphasis added). In Malley [v. Agin, 693 F.3d 28
> (1st Cir. 2012),] and the case it cites for the bad-faith principle,
> In re Hannigan, 409 F.3d 480 (1st Cir. 2005), we affirmed
> bankruptcy court orders that had relied on the debtors' bad
> faith to limit exemptions. *See* Malley, 693 F.3d at 30 (affirming
> surcharge against exempt property to offset fraudulent
> concealment of non-exempt property); In re Hannigan, 409
> F.3d at 484 (affirming denial of amendment to homestead
> exemption as a sanction for bad faith). Although Law appears
> to overrule Malley and Hannigan to the extent they limited
> exemptions based on bad-faith conduct, the Supreme Court's
> ruling does not restrict the bankruptcy court's discretion
> concerning amendments unrelated to exemptions—as was
> the situation here.
>
> U.S. v. Ledee, 772 F.3d 21, 29 n.10 (1st Cir. 2014*).* . . .
>
> The Supreme Court attempted to circumscribe the impact of its
> pronouncement in Law v. Siegel by applying it to federal exemption cases
> only, leaving undisturbed a bankruptcy court's power to consider a
> debtor's misconduct when dealing with state law exemption claims such as
> the homestead claim being asserted by Mr. Mateer here. This limitation is,
> however, far less meaningful than it sounds, at least in the First Circuit.
> Even if Massachusetts law recognizes a court's equitable power to deny
> homestead protection to a debtor engaged in fraudulent conduct with
> respect [to] the homestead property, the United States Court of Appeals for
> the First Circuit in Patriot Portfolio, LLC v. Weinstein (In re Weinstein), 164
> F.3d 677 (1st Cir. 1999), has instructed that such power is pre-empted by
> federal law in the event bankruptcy ensues. Weinstein appears to slam the
> door left minimally open by the Supreme Court in Law v. Siegel.

In re Mateer, 525 B.R. 559, 565–66 (Bankr. D. Mass. 2015)(footnotes omitted). In view of the decisions of the Supreme Court and the United States Court of Appeals for the First Circuit, the Court concludes that First American's request for an equitable lien lacks merit. The decisions it cites in support of its theory that it is entitled to an equitable lien all predate Law v. Siegel.

With respect to First American's reliance on § 522(o), the Court concludes that it failed in its burden of proof. Section 522(o) provides:

> [T]he value of an interest in—
>
> > (1) real or personal property that the debtor or a dependent of the debtor claims as a residence; [or] . . .
> >
> > (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead . . .
>
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10–year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

11 U.S.C. § 522(o) (emphasis supplied). In In re Corbett, 478 B.R. 62 (Bankr. D. Mass. 2012), this Court observed that "' the purpose of adding § 522(o) and § 522(p) in 2005 was the attempt by Congress to address the pre-BAPCPA "mansion loophole" and to limit the value of homestead exemptions when there is fraud. This lends support to our interpretation of § 522(o) - - that the statute was enacted to prevent the fraudulent attempt to build up equity in a homestead.'" 478 B.R. at 69 (quoting Soulé v. Willcut (In re Willcut), 472 B.R. 88, 94 (B.A.P. 10th Cir. 2012)). This Court further observed:

> According to the court in In re Presto, 376 B.R. 554 (Bankr. S.D. Tex. 2007), a case involving a debtor who sold his previous homestead, purchased his current homestead on the same date for a lower price, and used some of the new, nonexempt proceeds from the sale of his former home to improve his newly acquired homestead,
>
> > There are four elements to establishing an objection under § 522(o): (1) the debtor disposed of property within the 10 years preceding the bankruptcy filing; (2) the property that the debtor disposed of was nonexempt; (3) some of the proceeds

> from the sale of the nonexempt property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead; and (4) the debtor disposed of the nonexempt property with the intent to hinder, delay or defraud a creditor.
>
> In re Presto, 376 B.R. at 568 (citing In re Sissom, 366 B.R. 677, 688 (Bankr. S.D. Tex. 2007)). *The phrase "intent to hinder, delay or defraud a creditor" is similar to the language employed by Congress in 11 U.S.C. §§ 548(a)(1)(A) and 727(a)(2) and requires actual, as opposed to constructive, fraud.* In re Sissom, 366 B.R. at 691–92. "[T]he phrase 'the value of an interest in . . . real [ ] property . . . shall be reduced' in 11 U.S.C. § 522(o) means that the equity in a debtor's home that was obtained through fraudulent transfer of non-exempt assets into exempt assets is to be reduced. If there is no equity, there is no value subject to reduction." In re Willcut, 472 B.R. at 97. The party objecting to a debtor's claimed homestead and seeking a reduction in amount pursuant to 11 U.S.C. § 522(o) has the burden of proof using a preponderance of the evidence standard. *See* Fed. R. Bankr. P. 4003(c). Additionally, the Court concludes that the determination of whether the debtor could exempt "any property . . . disposed of" is determined on the petition date by virtue of the language of the statute.

In re Corbett, 478 B.R. at 69-70 (emphasis supplied).

The decision in Corbett informs the Court's decision. As noted above, the Court lacks competent evidence to determine the Debtor's fraud, let alone distinguish between an actual intent to hinder, delay or defraud a creditor and constructive fraud. Moreover, the elimination of the People's United Bank attachment, which affected both the Property and the Franklin Street Property, did not reduce the debt associated with the existing homestead and did not increase the equity in the Property. *See* In re Smither, 542 B.R. 39, 49 (Bankr. D. Mass. 2015). First American essentially asks this Court to bypass the filing of a complaint under 11 U.S.C. § 523 to hold that the debt underlying its judicial lien is at least in part nondischargeable. Such a ruling in the absence of competent evidence would deprive the Debtor of the protections afforded by Part VII of the Federal Rules of

Bankruptcy Procedure and the narrow construction afforded exceptions to discharge in furtherance of the Bankruptcy Code's "fresh start" policy. *See* Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997).

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Debtor's Lien Avoidance Motion.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: September 14, 2016